316 F.Supp. 1116 (1970)
Florence DIFFENDERFER and Nishan Paul, Plaintiffs,
v.
CENTRAL BAPTIST CHURCH OF MIAMI, FLORIDA, INCORPORATED, a nonprofit Florida corporation, Dade County, Florida, a political subdivision of the State of Florida, Porter W. Homer, County Manager, R. K. Overstreet, Tax Collector of Metropolitan Dade County, and Fred O. Dickinson, Jr., as Comptroller of the State of Florida, Defendants.
No. 69-746-Civ-JE.
United States District Court, S. D. Florida.
August 21, 1970.
*1117 Hollander & Pestcoe, Miami, Fla., for plaintiffs.
Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., and Thomas C. Britton, County Atty., for defendants.
Before DYER, Circuit Judge, and MEHRTENS and EATON, District Judges.
DYER, Circuit Judge:
Plaintiffs, who are citizens and taxpayers of Dade County, Florida, seek in this action a declaration that F.S. § 192.06(4), F.S.A. constitutes an establishment of religion and an inhibition on the free exercise of religion in violation of the First Amendment to the United States Constitution insofar as it authorizes tax exemption of property of the Central Baptist Church used as a commercial parking lot.[1] They also seek an injunction ordering the Dade County Tax Collector to assess and collect taxes on that property. A three-judge court was convened and the case was submitted on stipulated facts and plaintiff's motion for summary judgment. Decision was delayed pending the outcome of Walz v. Tax Commission, 1970, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 [May 4, 1970], which held there is no violation *1118 of the First Amendment religious clauses in a state taxation scheme which exempts from taxation property "used solely for religious worship". In view of Walz we hold the Florida exemption scheme, as it applies to the Central Baptist Church parking lot, constitutional, we deny the motion for summary judgment and the declaratory and injunctive relief sought by the plaintiffs, and we enter judgment for the defendants.
F.S. § 192.06, F.S.A. provides in pertinent part:
The following property shall be exempt from taxation:
* * * * * *
(4) All houses of public worship and lots on which they are situated, and all pews or steps and furniture therein, every parsonage and all burying grounds not owned or held by individuals or corporations for speculative purposes, tombs and right of burial; but any building being a house of worship which shall be rented or hired for any other purpose except for schools or places of worship, shall be taxed the same as any other property.
In a prior state case, Central Baptist Church v. Dade County, Fla., Fla.1968, 216 So.2d 4, Dade County attempted to tax that portion of the church property used as a parking lot. The church resisted successfully, the Supreme Court of Florida holding the lot exempt within the terms of the above quoted statute because it found:
[T]he limited part time rental of a portion of the church lot for commercial parking on weekday business hours is reasonably incidental to the primary use of the church property as a whole for church or religious purposes and is not a sufficiently divergent commercial use that eliminates the exemption as to the commercial parking lot portion of the property.
* * * * * *
The record conclusively reflects the church devotes the net income received by it from rentals of the commercial parking lot area to religious and educational purposes. Id. at 6.
Among the facts which the parties have stipulated to are the following:
All revenues generated from the parking area are used for religious, educational, literary, benevolent, fraternal and/or charitable activities of the church.
None of the expenses of operating the parking area are paid by or from the revenues generated by the parking area.
The church could not operate at its present location without the off-street parking spaces in its lot because of a local ordinance which requires auditoriums to provide a certain number of off-street parking spaces dependent upon seating capacity of the auditorium.
The parking spaces in the lot "are just as necessary for the operation of the Church as the roof over the Church Building."
The property in question is located in downtown Miami and occupies nearly a complete square block. The plaintiffs do not attack the statutory scheme as it applies to the property occupied by the church building itself. They attack the exemption only as it applies (by virtue of the decision in Central Baptist Church v. Dade County, supra) to the 59% of the church property which is used as a commercial parking lot six days of the week. The question we must decide may therefore be framed thusly: Does the holding in Walz v. Tax Commission, supra,that there is no establishment of religion and no inhibition of the free exercise of religion in a state taxation scheme which exempts from taxation property used "exclusively for religious purposes", i.e., "religious properties used solely for religious worship" encompass the tax exemption in the instant case as it applies to church property used as a commercial parking lot? We answer affirmatively.
The holding in Walz is confined to exemptions for religious properties used *1119 exclusively for religious purposes. Implicit in the Florida Supreme Court's holding in Central Baptist Church v. Dade County, supra, is the conclusion that what appears to be a commercial use of church property is really a religious use because all the proceeds from the lot go to church projects and because the parking lot is necessary to the functioning of the church. The parties in this case have stipulated to this effect. In other words, the instant case may be viewed as coming within the strict terms of Walz because of the finding of the state court and the stipulations here that the commercial use really amounts to a religious use.
However, it is not necessary to pigeonhole the instant case into the strict terms of the solely-for-religious-worship holding of Walz. Read more broadly, Walz stands merely for the proposition that a state is free to provide any tax exemption scheme it wishes (as long as the classifications are not capricious or arbitrary) and that exemptions to houses of worship are included because they do not violate the religious clauses of the First Amendment.
Walz makes no attempt to define what kinds of property may or may not be encompassed by an exemption scheme except to say that property used solely for worship can be included. On oral argument in Walz plaintiff's counsel stated that he was attacking tax exemptions only as applied to "property used exclusively for religious purposes" and not other property, such as schools or hospitals operated by religious institutions, because it was only the exemption to the worshipping activity (and not to other church activities) which he contended created an establishment of religion. See 38 LW 3189. Viewed in this light, it is clear that the limitation in the Walz opinion to property used exclusively for religious worship was merely a mechanism to put the case in the posture of dealing with the ultimate religious activity and the Supreme Court nevertheless held there was no establishment of religion and no inhibition on the free exercise thereof. A fortiori, a use of church property for slightly less religious purposes [the parking lot proceeds go to the church's educational and charitable activities as well as to its religious activities] does not create an establishment of religion and does not inhibit the free exercise of religion. Therefore, the exemption in the instant case is constitutional unless the classification church property used for commercial purposes where the income goes solely to church projectsis arbitrary or capricious.
It is true that Gibbons v. District of Columbia, 1886, 116 U.S. 404, 6 S.Ct. 427, 29 L.Ed. 680, was cited in Walz as a case denying "tax exemption as to land owned by but not used for the church, but rather to produce income". 397 U.S. page 679, 90 S.Ct. page 1417. However, Gibbons is not a bar to our reading of Walz or to the conclusion we reach. That case stands for no constitutional rule about church property used to produce income; it involved merely the construction of a federal statute which exempted Washington, D. C. church property from taxation but specifically provided that if such property were "used to secure a rent or income" it would be taxed like any other property.
In short, there is nothing in the majority opinion in Walz which indicates that a state may not constitutionally construe its religious exemption statute to include church-owned, commercially used property when the proceeds go solely to church projects.[2] Nor do we think *1120 that such an inclusion within the tax exemption scheme is arbitrary or capricious. Accordingly, we hold that F.S. 192.06(4), F.S.A. constitutionally encompasses the 59% of the Central Baptist Church's property utilized six days a week as a commercial parking lot. Plaintiffs' motion for summary judgment is denied, as is the relief sought by plaintiffs, and judgment will be entered for all the defendants.
EATON, District Judge (concurring specially).
Plaintiffs say that to exempt the Central Baptist Church of Miami, Florida, Inc. from paying real property taxes on approximately 75,000 square feet of land, consisting of 290 parking spaces, operated six days of each week as a commercial parking lot constitutes an establishment of religion, effects a prohibition of the free exercise of religion, and denies the Plaintiffs equal protection of the law.
Whatever else may be said about this exemption, it cannot be said, in view of Walz v. Tax Commission, 1970, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697, that the exemption constitutes an establishment of religion or effects a prohibition of the free exercise of religion.
If tax exemption granted on property used solely for religious worship does not constitute an establishment of religion or effect a prohibition of the free exercise thereof, then a tax exemption granted on property used as a profit-making parking lot does not.
To whatever extent each taxpayer in the urban Florida county of Dade is affected by this exemption, the fact is that every taxpayer is affectedincluding the members of the Church who pay real property taxes on their own Dade County property. The case does not present an "equal protection" proposition.
Therefore, I must concur.
NOTES
[1] Plaintiffs also attack the exemption of the church's parking lot on the ground that it unfairly discriminates against private operators of parking lots in the area, who are thereby put at a competitive disadvantage. Since it is not alleged that plaintiffs are themselves parking lot operators, there is no "injury in fact" to them sufficient to give them standing to raise this issue. Data Processing Service v. Camp, 1970, 397 U.S. 150, at p. 152, 90 S.Ct. 827, at p. 829, 25 L.Ed.2d 184.
[2] In fact, the concurring opinions of Justices Brennan and Harlan affirmatively assert that religious tax exemptions extend to all church property:

Any assumption that a church building itself is used for exclusively religious activities, however, rests on a simplistic view of ordinary church operations. * * * [T]he funds used to maintain the facilities as a place for religious worship and study also maintain them as a place for secular activities beneficial to the community as a whole. Even during formal worship services, churches frequently collect the funds used to finance their secular operations and make decisions regarding their nature. Brennan, concurring opin. at p. 688-689, 90 S.Ct. at p. 1421.
Justice Harlan's concurrence also supports the conclusion that the exemption necessarily encompasses all church property. He views the tax exemption scheme as applying to religious organizations as part of a class of nontaxable entities whose common denominator is their nonprofit pursuit of activities devoted to cultural and moral improvement. See p. 696 of his opinion, 90 S.Ct. p. 1425.